UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 JUL 15 AM 10: 42
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** § | |
| § | |
| Plaintiff, § | |
| § | **EP22CV0245** |
| v. § | |
| § | |
| **ARCADIA SOLAR SOLUTIONS, LLC,** § | |
| a Arizona Limited Liability Company § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant ARCADIA SOLAR SOLUTIONS, LLC ("Arcadia") is a Limited Liability Company organized and existing under the laws of Arizona with a principal address at 2211 S 48th Street, Suite A, Tempe, Arizona 85282 and can be served via its registered agent, Northwest Registered Agent, LLC at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

### NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

1

4.     Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant Arcadia's telemarketers and agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.     Defendant Arcadia offers solar panel systems to consumers. As part of marketing their services, Defendant Arcadia hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.     Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.     This Court has personal jurisdiction over Defendant Arcadia because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Arcadia regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be held vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23. Plaintiff's personal cell phone number (915) 490-0898 has been successfully registered on the National Do-Not-Call Registry since August 2021.

24. Defendant Arcadia hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit their solar panel systems.

25. Defendant Arcadia approves of the contracts with these telemarketers.

26. Defendant Arcadia pays the telemarketers out of bank accounts they own and control.

27. Defendant Arcadia are well aware that the unauthorized phone calls being made on their behalf soliciting their solar panel systems violate the TCPA.

28. Defendant Arcadia knowingly and willfully violate the TCPA because doing so benefits them financially when consumers purchase their solar panel systems.

29. Plaintiff received at least three (3) unauthorized phone calls to his personal cell phone (915) 490-0898 from or on behalf of Defendant Arcadia on the same day February 3, 2022.

30. Plaintiff has never had any relationship with Defendant Arcadia and never knew who Defendant Arcadia was prior to the unauthorized phone calls being made to his cell phone.

31. On February 3, 2022, at 12:25 PM Plaintiff received a call to his personal cell phone (915) 490-0898 from a telemarketer calling on behalf of Defendant Arcadia from phone number (586) 785-5244.

32. Plaintiff answered and was greeted by a telemarketer named Jordan.

33. Jordan asked Plaintiff what day he was free so his "solar guy" can go out and give him a free estimate on solar panels.

34. Plaintiff was confused about the call and advised Jordan he was interested and setup an appointment to have a free estimate for solar panels on February 4, 2022 at 8:30am for the sole purpose of identifying the company responsible for authorizing telemarketers to call Plaintiff's personal cell phone without having his prior express written consent.

35. Jordan then collected Plaintiff's name, address, and asked what electric company he was with.

36. Jordan advised Plaintiff that his solar expert was busy at the moment and would give Plaintiff a call back.

37. On February 3, 2022, at 1:29 PM Plaintiff received another phone call from Jordan.

38. Plaintiff answered and Jordan asked Plaintiff what day he was free so his "solar guy" can go out and give him a free estimate on solar panels.

39. Plaintiff advised Jordan that he had just spoke with him and about an hour ago and that he was still waiting to hear from his "solar expert."

40. Jordan apologized for calling again and advised Plaintiff his "solar expert" would be calling him shortly.

41. Defendant Arcadia trains their telemarketers not to say they are calling on behalf of Defendant Arcadia for the sole purpose of ducking liability of violating the TCPA.

42. On February 3, 2022, at 3:53 PM Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Arcadia's representative from phone number (915) 355-4156.

43. Plaintiff answered and was greeted by a representative named Hershey Robertson.

44.     Hershey advised Plaintiff he was calling from Arcadia Solar to confirm Plaintiff's solar appointment for tomorrow February 4, 2022.

45.     The appointment Hershey was calling to confirm was the appointment Plaintiff had scheduled with Jordan confirming Defendant Arcadia is the company responsible for authorizing telemarketers to call Plaintiff and solicit their solar panel systems.

46.     Plaintiff asked Jordan to email him with his information and Plaintiff would reach back out to him with a better day and time.

47.     Hershey asked Plaintiff to text him a picture of his electric bill so he can build a proposal for him and solicited Plaintiff for solar panel systems on behalf of Defendant Arcadia.

48.     On February 4, 2022, Plaintiff received an email from Hershey from hershey.robertson@arcadiasolar.com. *See "Exhibit A".*

49.     Defendant Arcadia knew the calls were being directed into the Western District of Texas and also knew these actions could cause them to be summoned into court as a result of those actions.

50.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendants.

Table A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 02/03/2022 | 12:25 PM | 586-785-5244 | Call from Arcadia telemarketer Jordan |
| 2 | 02/03/2022 | 1:29 PM | 586-785-5244 | Call from Arcadia telemarketer Jordan |
| 3 | 02/03/2022 | 3:53 PM | 915-355-4156 | Call from Arcadia rep Hershey |

51.     Defendant Arcadia employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

52. Defendant Arcadia and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their solar panel systems.

53. Defendant Arcadia have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant Arcadia knew full well that offshore telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant Arcadia. Defendant Arcadia willfully accepts these referrals and compensate the telemarketers for their illegal unauthorized phone calls.

54. Defendant Arcadia refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant Arcadia financially.

55. Defendant Arcadia is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp website ("Texas Registration Database") does not contain any of the Defendants' registrations.

56. Defendant Arcadia does not qualify for an exemption under § 302.053.

57. No emergency necessitated none of the alleged phone calls.

58. Plaintiff sent an internal do-not-call policy request to Defendant Arcadia to email marketing@arcadiasolar.com on July 8, 2022 which is an email listed on their facebook page they own and control https://www.facebook.com/arcadiasolarAS09.

59. Despite this e-mail, Defendant Arcadia failed and/or refused to send Plaintiff a do-not-call policy.

60. Upon information and belief, the Defendant Arcadia did not have a written do-not-call policy while it was sending Plaintiff the unauthorized phone calls.

61.     Upon information and belief, the Defendant Arcadia did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

62.     Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

63.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT ARCADIA

64.     Defendant Arcadia is vicariously liable for the telemarketing calls that generated the lead on their behalf.

65.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

66.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

67.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

9

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

68. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

69. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

70. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

71. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

72.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

73.     Defendant Arcadia is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

74.     Defendant Arcadia knowingly and actively accepted business that originated through illegal telemarketing.

75.     Defendant Arcadia knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

76.     By hiring a company to make calls on its behalf, Defendant Arcadia "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

77.     Moreover, Defendant Arcadia maintained interim control over the actions of its telemarketers.

78.     For example, Defendant Arcadia had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

79.     Furthermore, Defendant Arcadia's had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Arcadia and the ability to require them to respect the National Do Not Call Registry.

80.     Defendant Arcadia also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

81. Defendant Arcadia donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "solar panel system" services in the abstract.

82. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

83. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

84. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

85. Defendant Arcadia's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant Arcadia. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

86. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

87. Defendant Arcadia is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for solar panel systems on their behalf.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

88. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

89. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

90. The actions of the defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

91. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

92. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

93. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

94. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

95. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

96. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

97. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant Arcadia.

98. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

99. The calls were to the Plaintiff's cellular phone (915) 490-0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:

14

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

100. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

101. Defendant Arcadia and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least three (3) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

102. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(b)(3)(B) by Defendant Arcadia by the telephone calls described above, in the amount of $500.00 per call.

103. Plaintiff was further statutorily damaged because Defendant Arcadia willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

104. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant Arcadia and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

### COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

105. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. Defendant Arcadia called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

107. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by Defendant Arcadia by the telemarketing calls described above, in the amount of $500.00 per call.

108. Plaintiff was further statutorily damaged because Defendant Arcadia willfully and/or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

109. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

110. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

111. The foregoing acts and omissions of Defendant Arcadia and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

  c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

112. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

113. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:
### Violations of The Texas Business and Commerce Code 305.053

114. Plaintiff incorporates the foregoing allegations as if set forth herein.

115. The foregoing acts and omissions of Defendant Arcadia and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing unauthorized calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant Arcadia violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

116. Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

117. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## COUNT FIVE:
### (Violations of The Texas Business and Commerce Code 302.101)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

118. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

119. The foregoing acts and omissions of Defendant Arcadia and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

120. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for three calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for three calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Plaintiff of damages, as allowed by law under the TCPA;

H. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

July 15, 2022,                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com

# JUDGE KATHLEEN CARDONE

# EP22CV0245

7/10/22, 4:52 PM

Gmail - Arcadia Solar

 Gmail

Erik Salaiz <salaiz.ep@gmail.com>

**Arcadia Solar**
1 message

**Hershey Robertson** <hershey.robertson@arcadiasolar.com>
To: "salaiz.ep@gmail.com" <salaiz.ep@gmail.com>

Fri, Feb 4, 2022 at 7:32 AM

Good morning Mr. Salaiz, this is Hershey Robertson with Arcadia Solar just wanted to email you as requested. You can find all my contact info down below. If you could please email or text me a picture of the electric bill so I can build your proposal to you exact usage, based off of that graph in the left hand corner of your bill. You can visit Arcadiasolar.com to look at whatever you like to research about us. Also feel free to read through our reviews. I look forward to sitting down with you as soon as possible. Have a blessed and wonderful day.

Hershey Robertson
Arcadia Solar General Sales Manager
Hershey.robertson@arcadiasolar.com
(915)355-4156 (cell)
12115 Rojas Ste.700
El Paso, TX 79936

# EXHIBIT A